UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

JUAN YANG                          §
                                   §
v.                                 §          CIVIL NO. 4:24-CV-922-SDJ
                                   §
DOES 1-89                          §          **EX PARTE AND UNDER SEAL**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Juan Yang's ex parte motion requesting a temporary restraining order ("TRO"), expedited discovery order, asset-restraining order, and permission for alternative service of process via email. (Dkt. #7). After full consideration, the requested relief will be granted.

## I. BACKGROUND

Yang develops and sells "advanced ceiling fans" throughout the world. (Dkt. #7 at 8). Her product is a ceiling fan known for its design, innovation, and reliability. (Dkt. #1 at 2). She holds a patent for the fan: Patent No. D1,037,519 ("D519 Patent"), titled "Ceiling Fan With Light." Yang claims that Defendants, Does 1–89, are foreign individuals and business entities that sell infringing products. (Dkt. #7 at 8 n.2). Defendants operate webstores on several online marketplaces like Amazon, Temu, Walmart, and TikTok. The alleged infringing products are sold nationwide, including in the Eastern District of Texas. (Dkt. #7 at 8).

Yang filed this action to enforce her rights under the D519 Patent. She asks the Court to (1) temporarily enjoin Defendants' "continued manufacture, importation, distribution, offers for sale, and/or sale of any product that infringes the D519

1

Patent"; (2) temporarily restrain Defendants' assets to preserve Plaintiff's right to an equitable accounting; (3) expedite discovery to allow Plaintiff to obtain specific information about Defendants; and (4) authorize alternative service of process. (Dkt. #7 at 8). Yang also seeks ex parte relief because she fears that Defendants may "destroy evidence or transfer assets." (Dkt. #7 at 26).

## II. LEGAL STANDARD

To obtain a TRO, a party must demonstrate: (1) a substantial likelihood that she will prevail on the merits; (2) a substantial threat that she will suffer irreparable injury if the injunction is not granted; (3) her threatened injury outweighs the threatened harm to the party whom she seeks to enjoin; and (4) granting the preliminary injunction will not disserve the public interest. *Google, Inc. v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016).

A TRO may be issued ex parte if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 65(b). And as the Supreme Court has made clear, an ex parte TRO should be limited to serving the underlying purpose of "preserving the *status quo* and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers Local No*. 70, 415 U.S. 423, 439, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974).

## III. DISCUSSION

The Court considers each of Yang's four requests for relief in turn.

### A. Ex Parte Relief

At the outset, the Court finds that ex parte relief is justified. As the inventor and assignee of the D519 Patent, Yang has provided a sworn declaration with facts sufficient to show that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." (Dkt. #7-1). Her counsel, Shaoyi Che, also provided a sworn declaration explaining that Yang cannot give notice to Defendants because their contact information is "misleading." (Dkt. #7-2 at 4).

Along with these declarations, Yang asserts that notice should not be required because Defendants will likely disappear and dissipate their assets if notified of this suit. (Dkt. #7-1 at 3). Thus, ex parte relief is necessary to preserve the status quo and allow Yang a possibility to recover.

### B. Temporary Restraining Order

Next, the Court considers whether Yang's motion satisfies every element necessary for a TRO.

#### i. Likelihood of Success on the Merits

There are two requirements for showing a likelihood of success on a patent infringement claim: A plaintiff must show that (1) "it will likely prove infringement of the asserted claims," and (2) "that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability." *Metalcraft of*

*Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017) (citation omitted).

Beginning with the former, Yang can likely prove infringement. A comparison of the design claimed by the D519 Patent and the design of the alleged infringing products shows that Defendants' products are remarkably similar, if not identical. *Compare* (Dkt. #16-1) through (Dkt. #16-89) (showing the allegedly infringing products), *with* (Dkt. #4-42) (showing Yang's registered patent), *and* (Dkt. #4-43) (showing Yang and several Defendants' products side-by-side). As a result, Yang will "will likely prove infringement of the asserted claims." *Metalcraft of Mayville*, 848 F.3d at 1364.

Turning to the latter, the U.S. Patent and Trademark Office issued the D519 Patent on July 30, 2024. Under 35 U.S.C. § 282(a), the D519 Patent is presumed valid. *See also Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009) ("[T]he patent enjoys the same presumption of validity during preliminary injunction proceedings as at other stages of litigation."). Along with the presumed validity of the D519 Patent, there are also no enforcement challenges yet. Thus, Yang's "infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability."

For these reasons, Yang has met the first factor for a TRO.

**ii. Threat of Irreparable Injury**

Irreparable harm from patent infringement exists when the "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011).

A plaintiff must show that irreparable harm is "likely." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016). And a plaintiff must show a "causal nexus between [an infringing party's] conduct and [a patentee's] alleged harm." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Finally, "[u]nder the Lanham Act, a plaintiff seeking a preliminary injunction against infringement 'shall be entitled to a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits.'" *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*, 80 F.4th 536, 546 (5th Cir. 2023), *cert. denied sub nom. Shenzen Sanlida Elec. Tech. Co. v. Whirlpool Corp.*, 144 S.Ct. 807, 218 L.Ed. 2d 23 (2024) (quoting 15 U.S.C. § 1116) (cleaned up). The Federal Circuit has also recognized that "price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013).

The Court has found a likelihood of success on the merits for patent infringement, *supra* section III.B.i, which creates a presumption of irreparable harm. Further, Yang attests that she never licensed her patent to any Defendant. (Dkt. #7 at 15). So Defendants' alleged infringement erodes Yang's patent. Her lost exclusivity is not precisely compensable and bolsters the Court's irreparable harm conclusion. *See Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1378 (Fed. Cir. 2024) ("Where the alleged injury is not quantifiable, the harm cannot be adequately compensated and is irreparable."). Further, Defendants' market presence may contribute to "price erosion" and "loss of business opportunities." *Sequenom*, 726 F.3d

at 1304. Yang has therefore suffered irreparable harm.

Yang further states that she has suffered and will continue to suffer irreparable harm from Defendants "engaging in the unauthorized use of Plaintiff's intellectual property." (Dkt. #7 at 7). In fact, consumer "confusion" is likely because the infringing products are apparently identical to Yang's patented product. *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994) ("[C]onfusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money."). In other words, a causal nexus exists between Defendants' unabated infringement and Yang's probable lost market share. As a result, Yang will remain harmed without a TRO.

In short, Yang has been and will remain irreparably harmed, which satisfies the second factor for a TRO.

### iii. Balance of Harms

The Court finds that the balance of harms weighs in Yang's favor. Courts are loath to protect an infringing Defendant because it "assumed the risk" associated with patent infringement when it chose to undertake those activities. *See Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008) (citing *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business.").

Here, Yang expended considerable effort to acquire the D519 Patent. And the Defendants assumed the risk of infringement when they sold an infringing product.

On that basis, the balance-of-harms factor weighs in Yang's favor. Accordingly, Yang passes the third hurdle for a TRO.

### iv. Public Interest

Finally, the public interest strongly favors enforcement and protection of patent rights. *See, e.g.*, *MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, 505 F.Supp.2d 359, 379–80 (S.D. Tex. 2007), *aff'd*, 264 F.App'x 900 (Fed. Cir. 2008) ("The public interest is best served by protecting patent rights and enforcing the applicable laws."). Accordingly, the fourth factor is satisfied.

*   *   *   *

Because Yang has met all the requirements for injunctive relief on an ex parte basis, the Court will issue a temporary restraining order.

## C. Asset Restraining Order

Yang has also requested that the Court issue an asset restraining order. Federal courts have the power to preliminarily restrain the transfer of assets in suits "sounding in equity." *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F.App'x 707, 708–09 (5th Cir. 2007) (collecting cases); *see also Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940). Lost profits under the Lanham Act is "an equitable remedy." *Animale Grp. Inc.*, 256 F.App'x at 709.

Courts often order an asset restraint in patent-infringement cases involving online marketplaces where defendants are not located in the United States. *See, e.g.*, *Wearable Shoe Tree, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 1:22-CV-00789-RP, 2022 WL 18109689, at *2 (W.D. Tex. Oct. 7,

7

2022) ("Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless the restraint of those assets ordered in the TRO is continued."); *Qin v. P'ships & Unincorporated Ass'ns on Schedule "A"*, No. 6:21-CV-1243-ADA, 2022 WL 80274, at *5 (W.D. Tex. Jan. 7, 2022) (restraining Defendants from "transferring or disposing of any monies or assets until further ordered by [the] Court.").

Yang has confirmed that Defendants reside in foreign jurisdictions. (Dkt. #7 at 10). As a result, it is likely that, without a TRO, Defendants could dissipate their assets, thus foreclosing any recovery. For example, Defendants purportedly have multiple seller IDs and offshore bank accounts that could allow them to evade liability. With this context in mind, Yang seeks an equitable accounting so that she can identify lost profits. (Dkt. #7 at 22). Without restraining these assets, Yang's window to recover may quickly close.

Thus, the Court will allow Defendants' assets to be restrained to preserve the status quo.

## D. Expedited Discovery

Yang requests that the Court allow her to timely obtain discovery regarding each of Defendants' identities, including names, addresses, online webstores, and the location and value of each of Defendants' financial accounts. (Dkt. #7 at 23).

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or

when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). Although the Federal Rules do not provide an exact standard for granting such authorization, courts within the Fifth Circuit, including this district, have used a "good cause" standard to determine whether a party is entitled to early discovery. *See, e.g.*, *Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-893, 2018 WL 10127086, at *1 (E.D. Tex. Feb. 13, 2018); *Combat Zone Corp. v. Does 1–2*, No. 2:12-CV-00509, 2012 WL 6684711, at *1 (E.D. Tex. Dec. 21, 2012); *Ensor v. Does 1–15*, No. A-19-CV-00625, 2019 WL 4648486, at *1 (W.D. Tex. Sept. 23, 2019); *Greenthal v. Joyce*, No. 4:16-CV-41, 2016 WL 362312, at *1 (S.D. Tex. Jan. 29, 2016).

In a good-cause analysis, a court weighs five factors: (1) whether the plaintiff has made a prima facie case of actionable harm; (2) the discovery request's specificity; (3) alternative means to obtain the subpoenaed information; (4) whether there is a central need for the subpoenaed information to advance the claim; and (5) the user's expectation of privacy. *Combat Zone*, 2012 WL 6684711, at *1.

As the Court has explained, Yang has made a prima facia showing of a likelihood of success on the merits. *See supra* Section III.B.i. And the discovery sought here is specific: Yang seeks to identify the names, email addresses, webstores, and corresponding financial institutions and payment processors for each Defendant. The need for this information exists because the information is not publicly available. And without it, Yang will be unable to serve Defendants with notice. Finally, Defendants have a limited expectation of privacy because every online marketplace and payment platform requires Defendants to use a valid email address. (Dkt. #7-1 at 3). As a

result, Defendants must have registered a valid email address to conduct business on each platform. Thus, the Court finds there is good cause to allow Yang to engage in expedited discovery to obtain the specific information necessary to identify Defendants and secure compliance with this Court's order.

## E. Alternative Service of Process

Finally, Yang asks the Court to authorize alternative service of process via email. Yang asserts that electronic service is necessary because Defendants, who are all based in "foreign jurisdictions," (Dkt. #7 at 10), may have provided "false names and postal addresses to the e-commerce stores [that carry their allegedly infringing products]," (Dkt. #7 at 26). Under the circumstances, Yang contends that electronic service is warranted because Defendants must have legitimate and accurate email addresses to communicate with (1) the platforms carrying their products, and (2) the financial institutions with which Defendants do business. (Dkt. #7 at 26).

Federal Rule of Civil Procedure 4(f) provides three methods for effectuating service of process on a foreign individual or entity. First, "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." FED. R. CIV. P. 4(f)(1). The terms of the Hague Convention are "mandatory if available at the Place of Service." *RPost Holdings, Inc. v. Kagan*, No. 2:11-CV-238, 2012 WL 194388, at *1 (E.D. Tex. Jan. 23, 2012). But the Hague Convention does not apply if the address of the person to be served is unknown. *Id.* Second, "if there is no internationally agreed means, or if an international agreement

allows but does not specify other means, by a method that is reasonably calculated to give notice." FED. R. CIV. P. 4(f)(2). Third, "by other means not prohibited by international agreement, as the court orders." FED. R. CIV. P. 4(f)(3).

In addition, any service of process undertaken under Rule 4(f)(3) "must be consistent with procedural due process." *Whirlpool Corp. v. YiHangGou Trading Co.*, No. 22-CV-341, 2021 WL 1837544, at *2 (E.D. Tex. May 7, 2021). Due process requires that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Here, Yang has confirmed that Defendants do not provide a physical address in the public contact information section on the respective online marketplaces. (Dkt. #7-1 at 3). Because Defendants' addresses are unknown, the Hague Convention does not apply. *See RPost Holdings, Inc*, 2012 WL 194388, at *1.

Yang proposes to obtain Defendants' contact information from the online marketplaces and then quickly serve them by email. (Dkt. #7 at 28). Courts have repeatedly held that service of process by email satisfies due process. *See Whirlpool Corp.*, 2021 WL 1837544, at *3; *RPost Holdings, Inc*, 2012 WL 194388, at *2. The Court concludes that Yang's proposal to serve process by email satisfies the due-process standard and is reasonably calculated to give Defendants sufficient notice. For these reasons, the Court authorizes alternative service of process via email.

**F. A Minimal Bond is Appropriate**

The final issue for the Court is the appropriate bond amount that Yang must post. Federal Rule of Civil Procedure 65(c) provides that a temporary restraining order can issue "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c).

The Fifth Circuit has explained that, "under Rule 65(c), a court may elect to require no security at all." *A.T.N. Indus., Inc. v. Gross*, 632 F. App'x 185, 192 (5th Cir. 2015) (citations omitted). Put differently, Rule 65 allows the court to provide the amount that it considers proper. *Id.* (citation omitted). The Court finds that a $5,000 bond is warranted in this case.

### IV. TEMPORARY RESTRAINING ORDER, ASSET FREEZE, AND EXPEDITED DISCOVERY ORDER

Plaintiff, Juan Yang, having filed her complaint for Patent Infringement, and having moved ex parte for a TRO and other relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, and the Court having considered the complaint, declarations, exhibits, and memorandum of law filed in support, finds as follows:

1.  This Court has subject matter jurisdiction over the subject matter of this case.

2.  This Court has good cause to believe it has jurisdiction over the parties.

3.  There is good cause to believe that the Defendants identified in Dkt. #16-1, have engaged in, and are likely to continue to engage in, acts and practices that violate Yang's patent rights.

4.    Yang has shown a substantial likelihood of success on the merits; that she is likely to suffer irreparable harm if this order is not granted; that the probable harm to the Yang, if relief is not granted, outweighs the likely hardship that may result to the Defendants from this order; and that this order is not adverse to the public interest.

5.    There is good cause to believe that Yang will suffer immediate and irreparable injury from the sale, transfer, or other disposition or concealment by Defendants of their assets and business records unless Defendants are immediately restrained and enjoined by order of this Court without notice.

6.    There is good cause for issuing this order pursuant to Federal Rule of Civil Procedure 65(b).

7.    Exercising its discretion pursuant to *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 302–03 (5th Cir. 1978), this Court finds that Plaintiff's proper security amount required under Federal Rule of Civil Procedure 65 is **$5,000**.

It is therefore **ORDERED:**

1.    Defendants, their officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily enjoined and restrained from:

    a.    using U.S. Patent No. D1,037,519 ("the D519 Patent"), titled "Ceiling Fan With Light", in any manner in connection with the distribution,

marketing, advertising, offering for sale of any Infringing Products that is not authorized by Plaintiff to be sold in connection with the D519 Patent;

b.    manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for the Plaintiff, nor authorized by the Plaintiff to be sold or offered for sale, and which infringe upon the D519 Patent;

c.    moving, relocating, or otherwise disposing of any funds currently located in Defendants' online accounts, including, without limitation, from Alibaba, AliExpress, Amazon, Bonanza, CJDropshippping, DHgate, eBay, Etsy, Joom, Joybuy, Shein, Shopify, Temu, TikTok, Walmart, Wish, Alipay, PayPal, Stripe, Payoneer, WorldFirst, and Western Union; and

d.    engaging in any other activity that infringes on Plaintiff's rights in any manner.

2.  Each Defendant, within 14 days after receiving notice of this Order, shall serve on Plaintiff a written report under oath providing:

a.    their true name and physical address;

b.    all websites and Online Marketplace accounts on any platform that they own and/or operate;

c.    all of their associated financial accounts, including but not limited to

all Alibaba, AliExpress, Amazon, Bonanza, CJDropshipping,
DHgate, eBay, Etsy, Joom, Joybuy, Shein, Shopify, Temu, TikTok,
Walmart, Wish, Alipay, PayPal, Stripe, Payoneer, WorldFirst, and
Western Union, etc. accounts;

d.    the quantity of products that they have sold using Yang's IP
("Infringing Products");

e.    the location where each Infringing Product was shipped; and

f.    (f) the steps taken by each Defendant to comply with paragraphs
1(a)–(d) above

3.  Plaintiff may immediately commence discovery by providing actual notice,
pursuant to subpoena or otherwise, of this Order to any of the following parties:

a.    Defendants, their agents, servants, employees, confederates,
attorneys, and any persons acting in concert or participation with
them; and

b.    any banks, savings and loan associations, payment processors or
other financial institutions, including without limitation, Alibaba,
AliExpress, Amazon, Bonanza, CJDropshipping, DHgate, eBay,
Etsy, Joom, Joybuy, Shein, Shopify, Temu, TikTok, Walmart, Wish,
Alipay, PayPal, Stripe, Payoneer, WorldFirst, Western Union, etc. or
other merchant account provider, payment provider, third party
processor, credit card association (i.e. MasterCard and VISA) that
receive payments or hold assets on Defendants' behalf, as well as any

third party service providers, including without limitation, ISPs, back-end service providers, web designers, sponsored search engine or ad-word providers, shippers, domain name registrars, domain name registries or online third-party sellers who have provided services for Defendants (all of the foregoing under 3(b), collectively, "Third Party Providers"). The Third Party Providers are ordered to, within 3 business days after receipt of such notice, provide copies of all documents and records in such person or entity's possession or control relating to:

i.   The identities and email address of Defendants, their agents, servants, employees, confederates, and any persons acting in concert or participation with them and their locations;

ii.  Identifying information concerning Defendants' operations, including without limitation, identifying information associated with the Defendants' financial accounts, and the websites and and webstores where Defendants infringe and have infringed the D519 Patent (the "Infringing Webstores");

iii. the nature of Defendants' operations and all associated sales, methods of payment, for services and financial information, including, without limitation, identifying information associated with the Infringing Webstores and Defendants' financial accounts;

  iv. a full and detailed accounting of Defendants' sales and listing history related to the Infringing Webstores;

  v. a separate full accounting of Defendants' sales and listing history related to the sale of the Infringing Products (including, without limitation, the quantity of Infringing Products sold and the physical addresses to which the Infringing Products were shipped);

  vi. the identity of Defendants' Infringing Webstores, websites, and any domain name registered by Defendants; and

  vii. any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors, or other financial institutions, including without limitation, Alibaba, AliExpress, Amazon, Bonanza, CJDropshipping, DHgate, eBay, Etsy, Joom, Joybuy, Shein, Shopify, Temu, TikTok, Walmart, Wish, Alipay, PayPal, Stripe, Payoneer, WorldFirst, Western Union, or other merchant account providers, payment providers, third party processors, and credit card associations (i.e., MasterCard and VISA).

4. Defendants and any persons in active concert or participation with them who

have actual notice of this Order shall be temporarily restrained and enjoined from transferring, disposing of, or secreting any money, stocks, or other assets of Defendants until further ordered by this Court.

5. Upon Plaintiff's request, any Third Party Provider with actual notice of this Order who is providing services for any of the Defendants, or in connection with any of Defendants' Online Marketplaces, including, without limitation, any online marketplace platforms, shall, within seven (7) calendar days after receipt of such notice, provide to Plaintiff expedited discovery, limited to copies of documents and records in such person's or entity's possession or control, sufficient to determine:

   a.  the identities and locations of Defendants, their officers, agents, servants, employees, attorneys, and any persons acting in active concert or participation with them, including all known contact information and all associated e-mail addresses;

   b.  the nature of Defendants' operations and all associated sales, methods of payment for services, and financial information, including, without limitation, identifying information associated with the Online Marketplaces and Defendants' financial accounts, including Defendants' sales and listing history related to their respective Online Marketplaces; and

   c.  any financial accounts owned or controlled by Defendants, including their officers, agents, servants, employees, attorneys, and any

persons acting in active concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, PayPal, Alipay, Wish.com, Alibaba, Ant Financial, Amazon Pay, or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA).

6. Upon Plaintiff's request, those with notice of this Order, including the Third Party Providers as defined in Paragraph 3(b), shall within seven (7) calendar days after receipt of such notice, disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products.

7. All Third Party Providers and their affiliates are ordered to, within seven (7) calendar days of receipt of this Order, locate all accounts and funds connected to the Defendants identified in Exhibit 1 to the Complaint, and block all money transfers and funds from being transferred by such Defendants until further ordered by this Court.

8. This Order shall apply to the Infringing Webstores, websites, and any other domain names properly brought to this Court's attention and verified by sworn declaration that verifies such new webstores or domain names are being used by Defendants for the purpose of infringing the D519 Patent.

9. Plaintiff may provide notice of the proceedings in this case to Defendants,

including notice of the preliminary injunction hearing, service of process pursuant to Fed. R. Civ. P. 4(f)(3), and any future motions, by sending an e-mail to any e-mail addresses provided for Defendants by third parties, which provides access to the Complaint, this Order, and other relevant documents.

10. The Clerk of the Court is directed to issue a single original summons in the name of "The Individuals, Business Entities, and Unincorporated Associations identified in the Complaint" that shall apply to all Defendants. Electronic notice by e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

11. Within fourteen (14) calendar days of entry of this Order, Plaintiff shall deposit with the Court $5,000, either cash or surety bond, as security, which amount has, in the absence.

12. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order as permitted by and in compliance with the Federal Rules of Civil Procedure and the Eastern District of Texas Local Rules. Any third party impacted by this Order may move for appropriate relief.

13. Defendants answering papers, if any, shall be filed with the Clerk of this Court and served on the attorneys for Plaintiff by delivering copies thereof to the offices of YZ Law Firm LLP, 9355 John W. Elliott Dr, Ste 25555, Frisco, TX 75033, no less than 2 days in advance of the hearing to show cause, with any

reply by Plaintiff to be filed and served at the hearing.

### EXPIRATION OF TEMPORARY RESTRAINING ORDER

14. The portion of this order that constitutes a TRO is entered at **5:00 p.m. on Wednesday, December 4, 2024**. This TRO shall expire at **5:00 p.m. on Wednesday, December 18, 2024**, unless for good cause shown it is extended or the parties against whom it is directed consent that it may be extended for a longer period. *See* FED. R. CIV. P. 65(b)(2). All other provisions of this order, including the asset freeze, shall remain in full force and effect until specifically modified by further order of this Court.

15. A preliminary injunction hearing is set for **December 16, 2024, at 9:30 a.m.** at the United States Courthouse located at 7940 Preston Road, Courtroom 105, Plano, Texas.

### RETENTION OF JURISDICTION

16. This Court shall retain jurisdiction over this action for the purpose of implementing and carrying out the terms of all orders and decrees which may be entered herein and to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**So ORDERED and SIGNED this 4th day of December, 2024.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE