UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JUAN YANG | § |
| | § |
| v. | § CIVIL NO. 4:24-CV-922-SDJ |
| | § |
| DOES 1-89 | § |

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Juan Yang's Motion for a Preliminary Injunction. (Dkt. #7). After full consideration, the requested relief will be granted.

### I. BACKGROUND

Yang develops and sells "advanced ceiling fans" throughout the world. (Dkt. #7 at 8). Her product is a ceiling fan known for its design, innovation, and reliability. (Dkt. #1 at 2). She holds a patent for the fan: U.S. Patent No. D1,037,519 ("D519 Patent"), titled "Ceiling Fan With Light." (Dkt. #4-42). Yang claims that Defendants, Does 1–89, are foreign individuals and business entities that sell infringing products. (Dkt. #7 at 8 n.2). Defendants operate webstores on several online marketplaces, such as Amazon, Temu, Walmart, and TikTok. (Dkt. #7 at 8). The alleged infringing products (the "Accused Products") are sold nationwide, including in the Eastern District of Texas. (Dkt. #7 at 8).

Yang filed this action to enforce her rights under the D519 Patent. She moved for a temporary restraining order ("TRO"), an expedited discovery order, an asset-restraining order, and permission for alternative service of process via email. (Dkt. #7). The Court held a TRO hearing on November 5, 2024, and granted Yang's

1

motion. (Dkt. #17).

The Court also held a preliminary-injunction hearing on December 16, 2024. (Dkt. #56). Yang has presented legal argument and evidence, including a supplemental declaration, in support of her request for a preliminary injunction. (Dkt. #40, #41). Yang also has shown that, in advance of the preliminary-injunction hearing, Defendants were served via email in accordance with the Court's order on alternative service of process, with one exception.[1] (Dkt. #41 ¶ 5). Yang could not serve Defendant Doe 89 because this Defendant shuttered its store and disappeared before TikTok could provide its information. (Dkt. #41 ¶ 6). Otherwise, all Defendants have had the opportunity to respond to Yang's preliminary-injunction motion and to appear at the preliminary-injunction hearing. No Defendant has appeared before the Court or submitted any response to Yang's suit or her request for injunctive relief. As the case currently stands, approximately forty-two Defendants have been voluntarily dismissed. (Dkt. #41-1).

## II. LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions. To obtain a preliminary injunction, a party must demonstrate that "(1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm without

---

[1] Both the Fifth and Ninth Circuits have approved this method of service for preliminary injunctions. *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*, 80 F.4th 536 (5th Cir. 2023), *cert. denied sub nom. Shenzen Sanlida Elec. Tech. Co. v. Whirlpool Corp.*, 144 S. Ct. 807, 218 L. Ed. 2d 23 (2024); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process.").

an injunction, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest." *United States v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024) (en banc) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). The Fifth Circuit has also stressed that the "first factor—likelihood of success on the merits—is 'the most important.'" *Id.* (citing *Mock v. Garland*, 75 F.4th 563, 587 n.60 (5th Cir. 2023)). Although the Federal Circuit reviews preliminary injunctions under a regional circuit's law, it "gives dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues." *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1375 (Fed. Cir. 2024) (quotation omitted).

A "preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023). This is so because the "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). Although the movant's burden of persuasion is a high bar, the movant "is not required to prove [its] case in full at a preliminary-injunction hearing." *Id.*

### III. DISCUSSION

Yang asserts a single claim of patent infringement. The Court considers whether Yang has satisfied every element necessary for a preliminary injunction.

### A. Likelihood of Success on the Merits

There are two requirements for showing a likelihood of success on a patent-infringement claim: a plaintiff must show that "(1) it will likely prove infringement and (2) its infringement claim will likely withstand challenges to the validity and enforceability of the patents." *Natera*, 106 F.4th at 1375 (quotation omitted).

Beginning with the former, Yang can likely prove infringement. Design-patent infringement occurs when a party, "without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied." 35 U.S.C. § 289. The Supreme Court has explained that "a design patent is infringed 'if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same.'" *Samsung Elecs. Co. v. Apple Inc.*, 580 U.S. 53, 56, 137 S.Ct. 429, 196 L.Ed.2d 363 (2016) (citing *Gorham Co. v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1872)).

And the Federal Circuit has held that the "standard for determining design patent infringement" is the "ordinary observer" test. *Curver Luxembourg, SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1343 (Fed. Cir. 2019). But "the claimed and accused designs may be 'sufficiently distinct' and 'plainly dissimilar,' such that an ordinary observer clearly would not find the two designs 'substantially the same.'" *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F.App'x 895, 898 (Fed. Cir. 2020) (quotation omitted).

Under the ordinary observer test, the D519 Patent and the Accused Products are substantially the same for at least three reasons.

First, Yang's declaration states that Defendants are selling "identical or nearly identical ceiling fans with light . . . on e-commerce webstores," (Dkt. #40 ¶ 9), without licensing her patent, (Dkt. #40 ¶ 23). And a quick comparison of the D519 Patent's design and the Accused Products' design shows that the products are remarkably similar, if not identical. *Compare* (Dkt. #41-2) (showing the remaining Defendants' allegedly infringing products), *with* (Dkt. #4-42) (showing Yang's valid patent), *and* (Dkt. #4-43) (showing Yang's product and several Defendants' products side-by-side). Besides the ordinary-observer test, as the Court will discuss later, Yang provided evidence that an e-commerce platform and several customers misidentified the Accused Products for Yang's products. (Dkt. #58 ¶¶ 8–11). Therefore, Yang's patented design and the Accused Products are not "plainly dissimilar." *Super-Sparkly*, 836 F.App'x at 898.

Second, Yang's declaration includes several pictures showing how an ordinary observer would likely confuse the products. Yang groups the Accused Products into three "species" based on design characteristics and how the products mirror or mimic the patented design. For example, Species I purportedly mirrors the D519 Patent's design feature, matching each perspective. Indeed, it "even duplicates the appearance of the D519 Patent's broken line region." (Dkt. 40 at 4).

5



Species II, like Species I, "exactly mirrors the D519 Patent's design feature," but has "a tiny variation on the top of the socket portion." (Dkt. # 40 at 5).



Species III also "exactly mirrors the D519 Patent's design feature," but has "a variation of color themes." (Dkt. #40 at 5).



Indeed, Yang claims that "consumers could hardly distinguish products featuring patented designs and features from infringing products, especially when merely looking at pictures shown on the online stores." (Dkt. #40 ¶ 17). Because of these identical designs, an ordinary observer would likely believe that the Accused Products are substantially the same as Yang's patented product. *See Samsung*, 580 U.S. at 56.

Third, Yang attests that an e-commerce platform—Temu—and its customers believed that her product and the Accused Products were substantially the same. (Dkt. #58 ¶¶ 7–9). For instance, to sell on Temu, Yang asserts that Temu requires sellers "to list the price of their product at least 15% lower than Amazon." (Dkt. #58 ¶ 7). If sellers do not, then Temu "disables that product's listings." (Dkt. #58 ¶ 7). This happened to Yang's product listings.

In July 2024, Temu disabled Yang's listing because Temu believed Yang was flouting Temu's pricing mandate. (Dkt. #58 ¶ 8). But the product that Temu contended violated its rule was in fact an Accused Product. (Dkt. #58 ¶ 8). Besides its algorithmic detection systems, Temu relies on customer reports to enforce its pricing requirements. (Dkt. #58 ¶ 9). And in fact, customers told Temu that Yang's products

7

were sold on other e-commerce platforms at a lower price. (Dkt. #58 ¶ 11). As a result, both Temu and several of its online customers—ordinary observers—concluded that the designs are "substantially the same." *Samsung*, 580 U.S. at 56.

In sum, Yang never licensed the D519 Patent, Defendants mimicked her patented design to sell their products, and an ordinary observer would believe that the Accused Products are substantially the same as Yang's patented product. Yang can therefore likely prove infringement under the ordinary-observer test. *See Samsung*, 580 U.S. at 56; *PS Prods. Inc. v. Panther Trading Co.*, No. 2023-1665, 2024 WL 4996328, at *3 (Fed. Cir. Dec. 6, 2024).

Next, Yang must show that she will succeed on the merits with respect to patent validity and enforceability. Yang also succeeds here. The U.S. Patent and Trademark Office issued the D519 Patent on November 22, 2022. (Dkt. #4-42). Issued patents like the D519 Patent are presumed valid under 35 U.S.C. § 282(a). *See also Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009) ("[T]he patent enjoys the same presumption of validity during preliminary injunction proceedings as at other stages of litigation.").

No Defendant has appeared in this case, and there have been no challenges to the D519 Patent's validity. So because "the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." *Id.* The same logic applies to the D519 Patent's enforceability; no Defendant has contested this either. Based on the evidence before the Court, Yang has shown

8

that the D519 Patent would likely withstand both a validity and an enforceability challenge.

In sum, Yang has established her likelihood of success on the merits for patent infringement. Put differently, Yang can likely prove infringement, and the D519 Patent can withstand challenges to its validity and enforceability. On that basis, the Court now turns to the second element.

**B. Threat of Irreparable Injury**

A party seeking a preliminary injunction must show "it is likely to suffer irreparable harm if the injunction is not granted and establish a causal nexus between the alleged infringement and the alleged harm." *Natera*, 106 F.4th at 1378 (quotation omitted). As the Federal Circuit has explained, "[w]here the alleged injury is not quantifiable, the harm cannot be adequately compensated and is irreparable." *Id*. (quotation omitted). In this regard, "[e]vidence of head-to-head competition and lost market share can support a showing of irreparable harm." *Id*. (quotation omitted). The Federal Circuit has also acknowledged that "price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013).

Yang will likely suffer irreparable harm if an injunction is not granted.

To start, Yang makes three allegations supporting her irreparable-harm theory. First, she states that she has suffered and will continue to suffer irreparable harm from Defendants "engaging in the unauthorized use of Plaintiff's intellectual

9

property." (Dkt. #7 at 7). Second, Yang claims the "extent of harm to [her] brand's reputation and the diversion of customers due to loss in brand confidence are largely unquantifiable." (Dkt. #40 ¶ 17). Third, she contends that "given the nature and extent of the harm these products cause, it is impossible to value the damage that such sales have done precisely and will continue to do to [her] reputation." (Dkt. #41 ¶ 24).

Yang further notes that she was forced to lower her "profitable price to a compromised price to satisfy Temu's system requirement" because of the infringement. (Dkt. #58 ¶ 10). This compromised price is "near zero marginal profit." (Dkt. #58 ¶ 12). To be sure, "[e]vidence of potential lost sales alone does not demonstrate irreparable harm." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017). But Yang's irreparable harm is more than lost sales. For example, Yang attests that she never licensed her patent to any Defendant. (Dkt. #40 ¶ 23). So Defendants' alleged infringement flouts Yang's patent. Her lost exclusivity is neither quantifiable nor adequately compensable and is thus irreparable. *See Natera*, 106 F.4th at 1378.

In addition, consumer confusion occurred because the Accused Products appear identical to Yang's patented product. *Reebok Int'l v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994) ("[C]onfusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money."). In short, the price erosion, head-to-head competition, reputation damage, and lost

market share support a finding of irreparable harm here. *See Natera*, 106 F.4th at 1378; *Sequenom*, 726 F.3d at 1304.

Turning to the latter requirement—the causal nexus between the alleged infringement and alleged harm—Yang asserts that Defendants' sales of Accused Products have eroded her market share and pricing. (Dkt. #40 ¶ 17) (Yang affirming that Defendants' sales cause her to "lose pricing power, which in turn forces [her] to compete unfairly in pricing competition to maintain sales"). As explained above, Yang has confirmed that she was forced to repeatedly lower her price to maintain her webstore on Temu. (Dkt. #58 ¶¶ 6–8). Put simply, but for the Accused Products Yang would not be selling near a "zero marginal profit." (Dkt. #58 ¶ 102).

Yang also affirms that the infringing activity has damaged and continues to damage consumer confidence in any products embodying the D519 Patent's design and features. (Dkt. #40 ¶ 17). Her counsel notes several communications from Defendants that attest to the Accused Products' inferior quality. For example, Defendant 15 explained that it faced a return rate of 20%, (Dkt. #41 ¶ 11). Another Defendant suffered from poor customer reviews. (Dkt. #41 ¶ 12). Because the Accused Products look identical to the patented products, it is likely that Yang's patented products were stigmatized to certain potential customers. To that end, Defendants' sales have purportedly caused "price erosion, loss of goodwill, damage to [Yang's] reputation, and loss of business opportunities." *Sequenom*, 726 F.3d at 1304. Thus, the record before the Court is sufficient to demonstrate that the nexus between Defendants' sales and Yang's patented products have irreparably harmed her.

In sum, Yang's injury cannot be quantified. Nor can her money damages. This means Yang's harm is irreparable and will remain so absent a preliminary injunction. This element, too, is met.

**C. Balance of Harms**

A party seeking a preliminary injunction must establish that "the balance of equities tips in its favor." *Metalcraft of Mayville*, 848 F.3d at 1369 (quotation omitted). The Court must "weigh the harm to the moving party if the injunction is not granted against the harm to the non-moving party if the injunction is granted." *Id.* (quotation omitted).

Courts are loath to protect an infringing defendant because infringers "assume[] the risk" associated with patent infringement when they choose to undertake those activities. *See Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008) (citing *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business.").

The Court finds that the balance of harms weighs in Yang's favor. Yang expended considerable resources to develop the design claimed by the D519 Patent. (Dkt. #40 ¶ 7). Defendants assumed the risk of infringement when they built a business model rooted in infringement. *See Broadcom*, 543 F.3d at 704. So they cannot now complain about their business being harmed by a foreseeable injunction. And that injunction is necessary to prevent irreparable harm to Yang. Thus, the

balance of equities swings in her favor. Accordingly, Yang passes the third hurdle for a preliminary injunction.

**D. Public Interest**

In evaluating whether the public interest favors an injunction, "the district court should focus on whether a critical public interest would be injured by the grant of injunctive relief." *Natera*, 106 F.4th at 1380 (quotation omitted). Courts have found that the public interest favors enforcement of patent rights. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012).

This factor also favors Yang. The Court has determined that the remaining Defendants have likely engaged in, and are likely to continue to engage in, acts and practices that violate Yang's patent rights. Along with the public interest in enforcing patent rights, there is no "critical public interest" injured by granting an injunction. Therefore, the public interest would be best served here by entering a preliminary injunction to preserve Yang's patent rights.

\*   \*   \*

For these reasons, the Court holds that a preliminary injunction is warranted. The remaining Defendants have engaged in, and are likely to continue to engage in, acts and practices that violate Yang's patent rights.

## IV. Preliminary Injunction

Plaintiff, Juan Yang, having proved that she is entitled to preliminary relief under the applicable standard, and the Court, having considered the complaint, the request for a preliminary injunction, the declarations, exhibits, and memorandum of

law filed in support of the request for a preliminary injunction, as well as the entire record, finds as follows:

1. This Court has subject matter jurisdiction over the present case;

2. This Court has personal jurisdiction over the parties;

3. There is good cause to believe that the Defendants have engaged in and are likely to continue to engage in acts and practices that violate 35 U.S.C. § 271;

4. Plaintiff has shown a substantial likelihood of success on the merits; that Plaintiff is likely to suffer irreparable harm if this order is not granted; that the probable harm to the Plaintiff, if relief is not granted, outweighs the likely hardship that may result to the Defendants from this Order; and that this order is not adverse to the public interest;

5. There is ample reason to believe that immediate and irreversible harm will damage the Plaintiff due to the sale, transfer, or any other disposition or concealment of their assets and business records by the Defendants unless they are immediately restrained and prohibited from doing so by an order of this Court.

6. There is good cause for issuing this Order pursuant to Rule 65 of the Federal Rules of Civil Procedure and 35 U.S.C. § 283.

7. As with the temporary restraining order issued in this case (Dkt. #17), again exercising its discretion pursuant to *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 302–03 (5th Cir. 1978), this Court finds that Plaintiff's

proper security amount required for issuance of this Order under Fed. R. Civ. P. 65 is **$5,000**.

**It is therefore ordered:**

1. Defendants, their officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert or participation with or at the behest or direction of any of the foregoing, be preliminary enjoined and restrained from:

    a. using, reproducing, practicing, or enabling others to use, reproduce, or practice the U.S. Patent NO. D1,037,519 ("the D519 Patent"), titled "Ceiling Fan With Light," in any manner in connection with the distribution, marketing, advertising, or offering for sale of any Infringing Product that is not authorized by Plaintiff to be sold in connection with the D519 Patent;

    b. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for the Plaintiff, or authorized by the Plaintiff to be sold or offered for sale, and which infringe upon the D519 Patent;

    c. moving, relocating, or otherwise disposing of any funds currently located in Defendants' online accounts, including, without limitation, from Alibaba, AliExpress, Amazon, Bonanza, CJDropshippping, DHgate, eBay, Etsy, Joom, Joybuy, Shein, Shopify, Temu, TikTok, Walmart,

       Wish, Alipay, PayPal, Stripe, Payoneer, WorldFirst, and Western Union; and

   d. removing, destroying, or otherwise disposing of computer files, electronic files, business records, or documents relating to any of Defendants' webstores, websites, assets, operations, or relating in any way to the unauthorized practice of the D519 Patent.

   e. engaging in any other activity that infringes on Plaintiff's rights in the D519 Patent in any manner.

2. Each Defendant, within fourteen days after receiving notice of this Order, shall serve on Plaintiff a written report under oath providing: (1) their true name and physical address; (b) all websites and Online Marketplace accounts on any platform that they own and/or operate; (c) all of their associated financial accounts, **including but not limited to** all Alibaba, AliExpress, Amazon, Bonanza, CJDropshipping, DHgate, eBay, Etsy, Joom, Joybuy, Shein, Shopify, Temu, TikTok, Walmart, Wish, Alipay, PayPal, Stripe, Payoneer, WorldFirst, and Western Union, etc. accounts; (d) the quantity of products that they have sold using the Plaintiff's D519 Patent; (e) the location where each Infringing Product was shipped; and (f) the steps taken by each Defendant to comply with paragraphs 1(a)–(d) above.

3. Defendants and any persons in active concert or participation with them who have actual notice of this Order shall be preliminarily restrained and enjoined

from transferring, disposing of, or secreting any money, stocks, or other assets of Defendants until further ordered by this Court.

4. All Third-Party Providers[2] and their affiliates are ordered to, within seven (7) calendar days of receipt of this Order, locate all accounts and funds connected to the Defendants identified in the Exhibit SD-1, and block all money transfers and funds from being transferred by such Defendants until further ordered by this Court. **It is specifically ordered that All Third-Party Providers and their affiliates must, within seven (7) calendar days of receipt of this Order, provide Plaintiff information concerning Defendants fund-transferring records showing the detailed information of recipient.**

5. This Order shall apply to the Infringing Webstores, websites, and any other domain names properly brought to this Court's attention and verified by sworn declaration that verifies such new webstores or domain names are being used by Defendants for the purpose of infringing the D519 Patent.

6. Any Defendants that are subject to this Order may appear and move to dissolve or modify this Preliminary Injunction as permitted by and in compliance with the Federal Rules of Civil Procedure and the Eastern District of Texas Local Rules. Any third party impacted by this Preliminary Injunction also may move for appropriate relief.

---

[2] Third-party providers named by Yang include Amazon, Temu, Walmart, and TikTok. (Dkt. #7 at 8).

**So ORDERED and SIGNED this 20th day of December, 2024.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE